HARRY JHEOPART CAPEHART *v.* MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION

(No. 6917)

Submitted November 3, 1931.    Decided November 17, 1931.

318

*Froe, Capehart & Miller,* for plaintiff in error.
*Sanders, Crockett, Fox & Sanders,* for defendant in error.

MAXWELL, JUDGE:

The trial court sitting in lieu of a jury rendered judgment for defendant. Writ of error was awarded plaintiff. The suit is on a health-accident insurance policy. Four hundred dollars is claimed by plaintiff because of illness necessitating a major surgical operation.

A quarterly premium of $17.00, payable in advance, was due October 1, 1929. On the 22nd of September, 1929, the plaintiff mailed a check from the city of his residence, Welch, West Virginia, drawn on a bank of said city, to the proper representative of the defendant at Huntington, West Virginia, by whom it was received the following day. The check was deposited for payment the first of October, and a receipt therefor was then mailed by said representative to the plaintiff. On the 14th of October the check, not paid because of lack of funds, was returned by the bank to the defendant's representative at Huntington. (The bank had charged against plaintiff's account a note on which he was indorser and thus exhausted his funds.) The plaintiff was advised by said representative on the 22nd of October that the check had been dishonored. Plaintiff immediately mailed to the defendant's office at Huntington a postal money order in the amount of said premium, which postal order was received at the Huntington office the following day, and receipt therefor was promptly mailed to the plaintiff. Plaintiff became ill the

30th of October, and underwent an operation for appendicitis the 3rd of November. Defendant having denied his claim predicated on said illness, the plaintiff instituted this action on the policy.

The suit is a statutory motion for judgment on notice. Defendant pleaded the general issue and filed specification of defense under section 64, chapter 125, Code 1923. The substance of the specification is that the plaintiff being in default because of non-payment of premium due October 1, 1929, his subsequent payment of the premium by postal money order the 23rd of said month and the acceptance of said belated payment by the defendant operated to reinstate the policy subject to standard provision No. 3 of said policy, the vital part of which specified that such reinstatement shall "cover accidental injury thereafter sustained, and such sickness as may begin more than ten days after the date of said acceptance." And it is further averred by the defendant that plaintiff's illness arose within ten days from the payment of said overdue premium: therefore no liability on the policy for said illness.

By way of replication to said specification of defense plaintiff filed a statement in writing under the provisions of section 65, chapter 125, Code 1923, in which he set forth that the defendant by the acceptance of payment of said premium on the 23rd of October, 1929, elected to apply the same for the quarter October 1, 1929, to January 1, 1930, thereby electing to reinstate said policy as of the said first mentioned date, and that by so doing, defendant waived the default in the payment of premium October 1st, and also waived the operation of the above mentioned standard provision No. 3 of the policy; that in fact and in law said policy was reinstated from the 1st of October, 1929, and was accordingly in force the 30th of that month so as to cover the sickness of plaintiff which began on that date.

The position taken by plaintiff in his special replication cannot be sustained. In his testimony he states that he thinks the receipt which was sent to him from the Huntington office for the postal money order recited that the payment was for the quarter October 1, 1929, to January 1, 1930. (He is

not sure about this recital in the receipt, and, although he says he thinks he returned the receipt to the company along with other papers which they requested of him, he made no demand at the trial for the production of the same. However, for purposes of discussion we shall consider that the recital in the receipt of October 23, 1929, was as he thinks it was, that is, that it was for the payment of premium for the quarter beginning October 1st and ending January 1st.) But such recital in the receipt could not impair the contract between the plaintiff and the defendant—the insured and the insurer. The stipulation in standard provision No. 3 that a reinstatement after default should not cover any sickness that might begin within ten days after the acceptance of a belated premium is in no wise impaired by the recitals of the receipt for such overdue premiums, whether the receipt undertakes to give effect to the payment of the premium as of the date when it was due or as of the date that it was actually paid. In either event, under said standard provision No. 3, no sickness arising within ten days after the date on which the payment was actually made shall be covered by the policy. The reason for such provision in the policy is obvious, namely, to guard against possibility of a designing policy holder's paying a belated premium only when from pronounced symptoms of disease he knows that he is about to be overtaken by illness. However, nothing of that sort existed here.

The case was not argued orally in this Court. On brief, the plaintiff seeks further to counter the specification of defense by saying that the defendant, by reason of its delay from September 23rd to October 1st in depositing the check which he mailed on the 22nd of September, and its delay from October 14th to October 22nd in notifying him that the check had been returned unpaid, unnecessarily postponed the payment of the premium by plaintiff until the last mentioned date, which was within ten days of plaintiff's illness and it is therefore estopped by its said improper delays from now relying on the aforementioned condition of standard provision No. 3.

However meritorious this asserted estoppel may be, it can not be considered because not pleaded. The above mentioned

statutory provision under which plaintiff filed his replication (Code 1923, chapter 125, section 65) is mandatory in its requirement that "if the plaintiff intends to rely upon any matter in waiver, estoppel or in confession and avoidance of any matter which may have been stated by the defendant as aforesaid, the plaintiff must file a statement in writing, specifying in general terms the matter on which he intends so to rely * * *." In his replication, plaintiff made no mention of estoppel, though the statute is explicit. The section of the statute under consideration is one of our several statutory provisions with reference to proceedings upon insurance policies. The purpose of the statute is to bring forward simplified issue or issues between the parties, and to avoid surprise. The salutary requirements of the statute cannot be ignored. *Rheims* v. *Ins. Co.*, 39 W. Va. 672, 682.

The result is the same whether our conclusion be based solely upon the statute or whether consideration be given to a fixed and settled rule of pleading which is pertinent to a situation such as at hand. The rule is this: "Matter of estoppel may be relied on in evidence by the plaintiff when the only defense is the general issue, for the reason that the estoppel in such case cannot be pleaded. But when the matter to which the estopped applies is specially pleaded, then the estoppel must be specially replied or it cannot avail." *Hayes* v. *Mutual Association*, 76 Va. 225, citing 7 Rob. Prac., page 923; *Davis* v. *Thomas*, 5 Leigh 1; *Carroll County* v. *Collier*, 22 Gratt. 309. The rule is recognized in the case of *Muhleman* v. *Ins. Co.*, 6 W. Va. 508, 523.

There are repeated holdings of this Court that where an issue of fact is tried by a court in lieu of a jury and there has been an omission to introduce certain evidence upon which the right of recovery depends, the trial court should decline to make a finding or render judgment until it has given the party in default an opportunity to submit the evidence necessary to save his case, and if not having done so it has rendered judgment without development of the case upon the proper theories, the judgment will be reversed and a new trial awarded in furtherance of justice. *Coal Co.* v. *Colliery Co.*, 98 W. Va. 438, and cases there cited. In the case at bar, the de-

ficiency is in the pleadings and not in the proof. The question therefore arises as to whether, by analogy to said rule obtaining where essential evidence has been omitted, the trial court on its own motion (the plaintiff not having made such motion) should have declined to enter judgment without affording opportunity to the plaintiff to raise the question of estoppel by a proper replication. There are substantial reasons why such course ought not to be sanctioned.

In the first place, there is the statute already referred to (Code 1923, chapter 125, section 65) which explicitly and unequivocally requires the plaintiff in an action on an insurance policy to present by way of replication any matter of estoppel which he expects to rely upon by way of counter attack on the defense set forth by the defendant in its specification. The plain meaning of the statute is that this should be done in advance of proof. Again, it is only consonant with orderly procedure that the issues of an action at law should be properly developed by the pleadings before proof is taken, and that the issues thus developed should be the basis for the determination of the case, certainly where no effort is made to amend the pleadings before judgment. If such were not the rule, it would be possible for either party to such an action to take a new "tack" at any time that he perceived that his contention as already pleaded was not faring well. True, under the liberality of equity procedure, pleadings generally may be amended to conform to the proof, and causes will be remanded for that purpose. *Toothman* v. *Courtney*, 62 W. Va. 167. But we are of opinion that the situation at bar is much more strongly analogous to that which pertains to pleas *autrefois convict* and *autrefois acquit* in our criminal procedure than it is to either the amendment of pleadings in chancery to conform to the proof, or the remanding of cases to the trial courts to afford opportunity to introduce essential evidence which has been omitted. A plea of former jeopardy is essentially a plea of estoppel by record and is properly raised by special plea. II Bishop's Crim. Pro., secs. 806, 813; II Wharton's Criminal Evidence, sec. 592; *Seymour* v. *Commonwealth*, 133 Va. 775; *State* v. *Cross*, 44 W. Va. 315; *State* v. *Friedley*, 73 W. Va. 684. The fail-

ure to plead former acquittal or conviction operates as a waiver of that defense. _Rickles_ v. _State,_ 68 Ala. 538.

There is much authority for the proposition that where parties have had full opportunity to raise the question of estoppel by proper pleading and have failed to do so, they are not entitled to the benefit of such estoppel even though the same may appear from the evidence. _Gulf Red Cedar Co._ v. _Crenshaw,_ 169 Ala. 606; _Jones_ v. _Peebles,_ 130 Ala. 269; _Adkins_ v. _Sims & Brown,_ 129 La. 151; _Howe_ v. _O'Brien,_ (Tex.) 45 S. W. 812; _McQueen_ v. _Bank of Edgemont,_ 20 S. D. 378. On the general proposition that a court cannot give weight to matters, though proved, not stated in the pleadings nor fairly within their general allegations, see _Vansciver_ v. _Bryan,_ 13 N. J. Eq. 434; _Moran_ v. _Palmer,_ 13 Mich. 367; _Turley_ v. _Turley,_ 85 Tenn. 252.

A plea or replication of estoppel is a pleading in bar of the right of the opponent of the pleader. It goes to the very base of the action. Orderly procedure at law will not permit a party who has neglected to plead or reply an estoppel of his opponent's right of action or defense, as the case may be, to make no effort in the trial court to have the pleadings opened so that such matter of estoppel might be properly presented, and then, after an unfavorable decision in the trial court, to raise the question of estoppel in the appellate court, and, because the pleadings are insufficient, to have the adverse judgment reversed and the case remanded in order to afford opportunity to supplement the pleadings. To give sanction to such a course here would go far toward the tearing down of the fundamental, reasonable requirements of common law pleading which have been formulated and maintained for the purpose of producing certainty, definiteness and orderliness in the trial of actions. We must not embark on an uncharted sea. There is wisdom in the rule that where matters to which an estoppel applies have been specially pleaded, the estoppel must be specially set up in a reply or it will be deemed waived. We adhere to that rule.

It is further suggested that because there was no rejoinder to plaintiff's replication there was no proper issue, hence a mistrial. True, the replication was not traversed; but there

was a general issue plea upon which there was formal joinder of issue. As recited in the order the submission of the case was to the court "to hear and determine the issues raised by the pleadings and the evidence herein." Proof was taken as though the issue on the special pleading was complete. No objection was made in the trial court or in this Court that issue was not properly joined on the replication. In such situation a mistrial will not be declared. This conclusion is supported by the holdings in *Huffman* v. *Alderson*, 9 W. Va. 616, and *Henry* v. *Ohio River Rd. Co.*, 40 W. Va. 234, wherein there arose situations analogous to the one at bar.

The judgment of the trial court is affirmed.

*Affirmed.*