# CHARLESTON.

## RILEY v. AETNA INSURANCE COMPANY.

### Submitted April 10, 1917.   Decided April 17, 1917.

1.  INSURANCE — *Action on Policy — Sufficiency of Declaration — Statutes.*

    A declaration upon a policy of fire insurance, though not in the form prescribed by section 61, chapter 125, of the Code, but setting out in full the provisions of the policy and containing substantially all the averments of the declaration prescribed by said statute, is good on demurrer.   (p. 238).

2.  SAME—*Fire Insurance—Production of Books and Invoices.*

    In an action upon a policy of fire insurance for loss by fire of personal property it is a condition precedent to plaintiff's right of recovery, when demanded by the insurer by timely notice, that he should produce for examination on the trial, his books of account, bills, invoices, and other vouchers, as required by the policy,

unless it is impossible or good cause be shown for his failure to do so, and defendant may stand upon his demand therefor; but if it appears on the trial that the insurer has himself procured such documentary evidence and produces it before the court and jury, he will not be heard on writ of error to this court to complain of the error in the trial court ruling him to trial without the production of such documents by the plaintiff.   (p. 238).

3.  SAME—*Fire Insurance—Provision Against Encumbrances—Effect of Breach.*

The existence of an encumbrance upon personal property insured by a policy of fire insurance at the time the policy is issued, or the placing of such encumbrance thereon afterwards and during the life of the policy, without the consent of the insurer endorsed thereon or attached thereto as provided by the policy, constitutes a breach of the warranty therein against such encumbrances, and, unless waived by the insurer, or he be estopped by some act or conduct on his part, amounting to waiver, and such breach of the warranty is relied on to defeat action on such policy, and specification thereof has been given as prescribed by the statute, no evidence of waiver or estoppel should be received unless specification thereof in writing has been given by the insured as required by the statute.   (p. 240).

4.  SAME—*Delivery of Policy—Agent for Insured.*

When a policy of fire insurance is regularly issued and left with the agent issuing it, a banker, for safe keeping, this constitutes delivery of the policy, and the agent of the insurer thereby becomes the agent for the insured for the custody of the policy, and the insured is bound to know the terms and conditions thereof, and cannot excuse his breach of any of the warranties therein on the ground of ignorance thereof.   (p. 240).

5.  SAME—*Fire Insurance—Encumbrances—Estoppel.*

The fact that prior policies on the same property issued by the same agent for the same insurer had attached thereto the agreement of the insurer to an encumbrance then existing thereon, but which the agent knew at the time of issuing the policy sued on had been paid off, did not constitute notice to the insurer of the existence of a subsequent encumbrance upon the property, or put the insurer or his agent upon inquiry to ascertain the existence thereof, or estop him from relying on the breach of warranty in the policy against such encumbrance.   (p. 240).

6.  SAME—*Fire Insurance—Valuation—Question for Jury.*

The provision in a policy of fire insurance against false swearing is not violated by the insured by slight overestimates in his proofs of loss of the value of the property destroyed, but when the dis-

parity between the value so placed upon the property by him is so great, and so out of proportion to the actual value thereof as shown upon the trial as to plainly evince intent on his part to defraud the insurer, the question becomes one of law for the court and not of fact for the jury, and defendant is entitled to an instructed verdict in his favor.  (p. 243).

Error to Circuit Court, Roane County.

Action by P. W. Riley against the Aetna Insurance Company.  Judgment for plaintiff, and defendant brings error.

*Reversed, verdict set aside, and new trial awarded.*

*Pendleton, Mathews & Bell,* for plaintiff in error.

*Ryan & Boggess,* for defendant in error.

MILLER, JUDGE:

To obtain a review of the judgment for plaintiff for six hundred dollars, upon one of its policies of fire insurance, defendant obtained this writ of error.

First, it is pointed out that the demurrer to the declaration should have been sustained.  While the record shows such demurrer, the case was tried without reference thereto on the other pleadings, but the effect of the judgment was to overrule the demurrer.

The declaration is neither the short form prescribed by section 61, of chapter 125, of the Code, nor a common law declaration upon a policy of insurance.  It seems to be an invention of the pleader, and probably not good as a common law pleading.  Why the pleader should have chosen this particular form of declaration instead of the simple form prescribed by statute, is difficult to comprehend.  However, we conclude that as the declaration sets out in full the policy sued upon, and alleges substantially that by virtue of the policy, defendant owes plaintiff for loss in respect to the property insured thereby, etc., it should be construed as one under the statute, and not as a common law declaration, and good upon demurrer.  It becomes unnecessary, therefore, to consider the several points of objection to the declaration, based upon the theory of a common law pleading.

The next point is that the court erred in allowing the

trial to proceed without requiring plaintiff, upon its demand, to furnish for examination, his books of account, bills, invoices, and other vouchers, as required by the terms of the policy, and as required in one of its specifications of defenses. At the opening of the trial defendant renewed the demand for the papers and documents specified to be used as proof. Plaintiff, through his counsel, answered that he did not have the papers demanded or any of them, never did have them, and could not produce them, except the statement or account of H. D. Wells, for thirty nine and one half yards of linoleum, which was produced and offered the defendant. The ruling of the court was that the plaintiff should furnish these papers, if they were in existence, and upon the further demand of counsel, the court ruled that it seemed to be impossible for the plaintiff to produce the papers, and ruled defendant to trial without their production for the reason given.

The provisions of the policy require that if the originals be lost, certified copies thereof shall be produced by the insured, and the only excuse offered on behalf of plaintiff, by his counsel, was that he did not have the papers called for, nor any of them, and never had had them. We do not think this excuse was sufficient. He did not answer that he could not produce certified copies thereof, or explain why he could not. Moreover, on cross-examination, plaintiff showed that he had made some effort to obtain duplicate bills of invoice from L. M. Taylor Barber Supply Company, of Cincinnati. He does not say that this company refused to furnish him these duplicates, but they told him they would have to go down in the basement and dig them out, and didn't want to do it, it wasn't necessary. He does not pretend to have tried to obtain duplicates from other concerns from whom the property destroyed was purchased, and on further cross-examination the defendant itself produced a number of invoices of the L. M. Taylor Barber Supply Company, for supplies sold Riley, and the defendant also put upon the stand several witnesses from supply houses, who testified to having sold most of the articles destroyed, either to the plaintiff himself, or to his predecessors in title, who had purchased

the property from these houses, so that we do not think plaintiff showed a good excuse for not complying with the demand, and defendant might have rested upon its demand to defeat recovery. Our decisions so hold. *Rosenthal Co.* v. *Scottish Insurance Co.*, 55 W. Va. 238; *Tucker* v. *Colonial Fire Insurance Co.*, 58 W. Va. 30; *Teter* v. *Franklin Fire Ins. Co.*, 74 W. Va. 344, 82 S. E. 40. But inasmuch as the defendant appears to have had on hand most, if not all, of these bills, or had actual information in regard to them, and proved the prices at which the property had been purchased, it could not have been prejudiced on the trial by the failure of the plaintiff to produce them upon its demand; and if this was the only error relied upon as ground for reversal we would not be disposed to reverse the judgment· on this account alone. The provision in the policy requiring production of such papers is to prevent fraud and imposition upon insurance companies, and if it appears, as in this case, that an insurance. company has not been prejudiced, but has itself obtained full information respecting the subjects of its demand, it ought not to be heard to complain in an appellate court.

Another proposition contended for is that the court should have directed the jury to return a verdict for defendant, as required by its instructions numbered one and six, because of the existence of a deed of trust or chattel mortgage upon the property at the time of the issuance of the policy and at the time of the fire, without the agreement of the company endorsed upon or added to the policy, and in violation of one of the express provisions thereof, rendering the policy void.

The fact of the existence of such encumbrance upon the property is not controverted. This is one of the specifications of defense. Unless waived in some formal manner, it constituted a breach of the promissory warranty contained in the policy, voiding it, and precluding recovery. The proof of loss submitted by plaintiff admitted the existence of this encumbrance, and notwithstanding the notice of defenses specified this among others as one of them, plaintiff filed no statement in writing, specifying in general terms or otherwise his reliance upon any matter in waiver or estoppel or

of confession and avoidance thereof, as required by section 65, chapter 125, Barnes' Code 1916, wherefore, if objected to, he should not have been permitted to offer any evidence showing or tending to show waiver of this provision of the policy. Unless waived in the manner provided by the policy, or defendant was estopped by some act, binding it, from asserting this defense, the breach of the provision of the policy constituted a complete bar to any recovery upon· the policy. *Oliker* v. *Williamsburgh Insurance Co.,* 72 W. Va. 436, 78 S. E. 746; *Virginia etc. Ins. Co.* v. *Case Threshing Machine Co.,* 107 Va. 588; *Crikelair* v. *Insurance Co.,* 168 Ill. 309, 61 Am. St. Rep. 119.

Plaintiff endeavored to meet this defense, without notice specifying them, upon several grounds: (1) That neither the. policy sued on, nor the prior policies, of which the one sued on was a renewal, prepared by Thompson, the defendant's agent, were ever delivered to him until after the fire occurred; (2) that the policy existing upon the property when plaintiff purchased it from one Steber, had upon it the deed of trust or mortgage clause, and that the first policy issued to plaintiff had also attached to it the deed of trust clause, and that when the policy sued upon was written by defendant's agent, plaintiff gave him no directions to leave off the mortgage clause, and made no false representation with reference thereto, and in fact did not see the policy until some ten days after the loss occurred, when it was delivered to him so that he might collect his money; (3) that the deed of trust was fully paid off and defendant could not have been prejudiced thereby; (4) that by delivery of the policy sued upon some eight or ten days after the loss occurred, knowing of the existence of the deed of trust, and that plaintiff had never before seen it, defendant thereby waived all objections to the same, based on omission of. the mortgage clause. As no notice specifying these grounds of waiver or estoppel was given by the plaintiff, as required by the statute, they were not available on the trial of the action, and the evidence offered in support thereof, over the objection of the defendant, should have been excluded.

But do these matters constitute waiver or estoppel on the

part of defendant of the promissory warranty against encumbrances? The first is based on the theory of want of delivery of the policy until after the fire; but the record shows retention of the policies, including the one sued on, by Thompson, the agent, in the bank of which he was cashier, for safe keeping for plaintiff. Thereafter the bank or Thompson became the agent of plaintiff to hold the policy. We would have to say there was delivery of the policy, and that the actual turning over of the policy to the plaintiff after the fire did not constitute original delivery thereof, but amounted simply to performance of a duty or obligation of Thompson, as agent for plaintiff. If there had been no previous delivery no action would have accrued to plaintiff to sue upon the policy.

Nor do we think the facts set up in the second ground constituted waiver or estoppel on the part of the defendant. It is not contended that defendant or its agent had notice either from plaintiff, his agent, or any one else, of the existence of the deed of trust or mortgage in favor of Vandale, at the time of the issuance of the policy. True, he had notice of the existence of the prior deed of trust in favor of Goff, but he swears he had information from Goff, before issuing the policy, that that encumbrance had been paid off. The record shows that before issuing the policy Thompson, agent, sent one of his solicitors to inquire of plaintiff what his wishes were with reference to the policy about to expire, and was advised that plaintiff desired the policy renewed, but for $900.00, instead of $750.00, the amount of the expiring policy. But it is not contended that plaintiff gave any notice to either Thompson or to his solicitor of the execution of the new deed of trust in favor of Vandale; nor is it shown that at the time of the execution and delivery of this new mortgage any notice was given to defendant or its agent thereof; nor is it claimed that defendant or its agent thereafter and before the property was destroyed by fire had notice thereof. We do not think that notice of the existence of the Goff deed of trust when the prior policies were written was sufficient to put defendant or its agents upon inquiry as to the existence of the new encumbrance when the new policy was written.

Thompson, as already stated, had information that the old deed of trust had been discharged. If he had written the new policy with a mortgage clause in favor of Goff, it would not have availed the plaintiff anything, nor would it have protected the new mortgagee. If Thompson, agent, had had notice, or had in any way assumed the duty or obligation to make inquiry respecting the new deed of trust or mortgage, defendant might have been bound by his default. *Oliker* v. *Williamsburgh Insurance Co., supra,* page 442; 1 Clement on Fire Insurance, 421, rule 19, and cases cited; *Woodward* v. *Republic Fire Ins. Co.,* 32 Hun. 365; *National Union Fire Ins. Co.* v. *Burkholder,* 116 Va. 942; *Skinner* v. *Norman,* 165 N. Y. 565; *Farmers Mutual Fire and Lightning Ins. Co.* v. *Lecroy,* 91 Ill. App. 41; 14 R. C. L. 1173, section 350. But it is not contended or shown that defendant, or its agent, had any such notice, or was in any way put upon inquiry with respect to the new deed of trust. And these views, we think, also make complete answer to the third and fourth grounds relied upon. As stated, the delivery of the policy after the fire did not amount to a waiver or estop the defendant from relying upon plaintiff's breach of warranty. Plaintiff was bound to know the terms and conditions of his policy. Leaving it for safe keeping in the custody of the bank or of its cashier, Thompson, did not relieve him from the obligation to know its terms; nor did the fact of delivery by the plaintiff's own agent constitute a waiver by defendant company of any of the warranties in the policy. *Cleaver* v. *Insurance Co.,* 71 Mich. 414; *Morrison* v. *Insurance Co.,* 69 Tex. 353. Besides, it is not even shown that either the defendant or Thompson knew of the existence of the deed of trust at the time it was actually delivered into the hands of plaintiff. Plaintiff offered no proof of such notice. True, his proofs of loss, verified on December 1, 1914, disclosed the existence of the Vandale trust, but this was long after the delivery of the policy to plaintiff. But we are pointed to no evidence, nor do we find any in the record, of prior knowledge of Thompson, agent, of the existence of that encumbrance.

Another proposition of defense is that in violation of the terms of the policy, and voiding it, the plaintiff swore falsely

in his proofs of loss, as to the value of the property insured, and that on this ground the court erred in refusing to instruct the jury to return a verdict for the defendant. By items, plaintiff swore, that the value of the property destroyed aggregated the sum of fifteen hundred dollars; whereas the jury found according to the uncontradicted evidence a verdict of only six hundred dollars. The property insured was a barber shop outfit. One witness, representing a barber supply house, proposed to furnish a complete outfit, new, like that of plaintiff, at the price of six hundred and two dollars and ninety three cents, free on board cars at Spencer, West Virginia, where the property destroyed was situated. And the evidence shows conclusively that plaintiff was guilty of gross exaggeration unjustified by all the facts in putting so large a value upon his property. In his return for taxation to the assessor he had sworn that the value of the property was two hundred and fifty dollars. Of course this was not conclusive, but an under valuation of the property. The values placed upon the different items by the plaintiff in his proof of loss was grossly in excess of the actual prices paid for the property. We decided in *Medley* v. *German Alliance Insurance Co.,* 55 W. Va. 342, in accordance with the general rule, that false swearing touching any matter relating to the insurance or the subject thereof, contrary to the provision in the policy, must be intentional, and done for the purpose of defrauding the insurer. Does this case fall within that rule? And in *Teter* v. *Franklin Fire Insurance Co., supra,* we held that the clause in an open policy against false swearing is not violated by slight overestimates of the value which may be reasonably accounted for by honest difference of opinion. But can it fairly be said in this case that the over valuations of his property by plaintiff amounted to but slight overestimates thereof, so as to bring this case within the rule of the Teter Case? We cannot so hold. The disparity between the sworn statement and the actual value of his property, as it must have been known to plaintiff, is too great. He would justify his statement on the ground that he had paid one thousand dollars for the property, and that shortly before his purchase

thereof it had been optioned to another at the price of twelve hundred dollars. But this price included the good will of the business, which was not the subject of insurance; only the physical property was covered by the policy. True it is that where the evidence is conflicting the question of fraudulent design or intent is generally one for the jury. 2 May on Insurance, section 477; 4 Cooley's Briefs on Insurance, page 3431. But the evidence in this case as to the actual value of the property cannot be said to be in conflict. The latter authority says: "Attention should, however, in this connection, be called to the numerous cases already cited in which the policies have been held forfeited by the fraud of insured, and which plainly assume that here, as in other cases involving a fraudulent intent, there is a point where the question of fraud or false swearing becomes one of law, and beyond which the insured cannot be heard to say that his intent was innocent." While the burden of proof in such cases is on defendant, we think it has fully sustained the burden in this case, and that it was entitled to an instruction to the jury to find a verdict in its favor.

This conclusion, of course, is based upon the evidence adduced upon the trial. We do not know what the evidence may be upon another trial, and do not wish to be understood as intending to preclude the plaintiff upon another trial from establishing his case by other or additional evidence if it is possible for him to do so.

What has already been said we think constitutes a sufficient response to all other points of error relied upon, and our conclusion is to reverse the judgment, set aside the verdict, and award the defendant a new trial.

*Reversed, verdict set aside, and new trial awarded.*